UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | No. 1:11-cv-2064-AWI-JLT |
| Plaintiff, | **ORDER APPROVING MODIFICATION TO CONSENT DECREE** |
| v. | |
| **CALPORTLAND COMPANY**, | |
| Defendant. | |

_____/

This Court has read and considered the parties' proposed modification to the consent decree entered on February 10, 2012. The modification is designed to allow for the inevitable short term variation in $SO_2$ emissions inherent in operation of the CalPortland Company ("CalPortland") facility, but retain the 1.7 pounds of $SO_2$ per ton of clinker average emission cap. The proposed modification does so by shifting the measurement period from a 30-day period to a 90-day period. The 30-day public comment period has closed and no comments were received by the United States. After full consideration of the proposed modification, the Court determines the modification to be fair, reasonable, consistent with the Clean Air Act, and in the public interest. As such the modification will be granted.

The United States and CalPortland have agreed, and this Court hereby ORDERS the following amendments to the Consent Decree entered by the Court in this action on February 8, 2012:

A. Paragraph 6 shall be amended to include the following definition:

(oo) "90-Day Rolling Average Emission Rate" shall mean the rate of emission of $SO_2$ expressed as pounds (lb) per Ton of clinker produced ("lb $SO_2$/Ton of clinker") at the Kiln and calculated in accordance with the following procedure:  first, sum the total pounds of $SO_2$ emitted from the Kiln during an Operating Day and the previous 89 Operating Days, as measured pursuant to Section V.C. (Continuous Emission Monitoring Systems); second, sum the total Tons of clinker produced by the Kiln during the same Operating Day and the previous 89 Operating Days; and third, divide the total number of pounds of $SO_2$ emitted from the Kiln during the 90 Operating Days referred to above by the total Tons of clinker produced at the Kiln during the same 90 Operating Days.  A new 90-Day Rolling Average Emission Rate shall be calculated for each new Operating Day.  Each 90-Day Rolling Average Emission Rate shall include all emissions of $SO_2$ from the Kiln during all periods of Kiln Operation on any Operating Day, including emissions during each Startup, Shutdown, or Malfunction.  If CalPortland asserts that a Malfunction and any resulting Kiln Shutdown and Startup is a Force Majeure event within the meaning of Section XI (Force Majeure), CalPortland shall include all such emissions in the calculation of the 90-Day Rolling Average Emission Rate, but shall not be subject to stipulated penalties for a violation of an applicable emission limitation pursuant to Section X (Stipulated Penalties) to the extent that emissions associated with the particular Malfunction and any resulting Kiln Shutdown and Startup cause an emission violation and the Malfunction and any resulting Kiln Shutdown and Startup is determined to be a Force Majeure event under Section XI (Force Majeure) and CalPortland has complied with the requirements of that Section.

B. Paragraph 19 shall be amended to read:

19. The final Emission Limits for $NO_x$ and $SO_2$ submitted by CalPortland to EPA as part of the Final Demonstration Report(s) pursuant to Section V (Control Technology Demonstration Period) of Exhibit A shall not be greater than 2.5 lb of $NO_x$/Ton of clinker on a 30-Day Rolling Average and **1.7 lb of $SO_2$/Ton of clinker on a 90-Day Rolling Average**. For CO, the final Emission Limit is a 30-Day Rolling Average Emission Limit of 1.0 lb CO/Ton of clinker effective upon the date of submission of the Demonstration Report required by Exhibit A subject to Subparagraph 15(c)(i)-(iii) of this Consent Decree.

C. Paragraph 24 shall be amended to read:

24.     At any time prior to termination of this Consent Decree, CalPortland may request EPA's approval to implement an alternative pollution control technology for NOx or SO2 other than what is required by this Consent Decree.  In seeking such approval, CalPortland must demonstrate to EPA that such alternative pollution control technology will:  (a) achieve and maintain the applicable Emission Limit established pursuant to Exhibit A or, (b) meet the applicable limits established by the New Source Performance Standard, 40 C.F.R. Part 60 Subpart F (NSPS Emission Limits) for NOx and/or SO2, if such limits are in effect and more stringent than 2.5 lb of NOx/Ton of clinker on a 30-Day Rolling Average and **1.7 lb of SO2/Ton of clinker on a 90-Day Rolling Average**.  EPA's decision on a request is subject to the Section XII (Dispute Resolution) provisions of this Consent Decree.  CalPortland's request shall address when the alternative pollution control(s) will be installed and operational, and for the NSPS Emission Limit(s) in effect at the time, indicate when it will apply to the Kiln.  After any approval by EPA under this Paragraph of an alternative NSPS Emission Limit, CalPortland shall continue to comply with all requirements of this Consent Decree, including Exhibit A, until such time as CalPortland notifies the EPA in writing that it is meeting the current NSPS Emission Limit(s) for NOx or SO2.  As of that date, the

NSPS Emission Limit(s) for NOx and/or SO2 in effect at that time shall become the Emission Limit(s) for all purposes under this Consent Decree, and CalPortland would no longer be obligated to complete the test-and-set process set forth in Exhibit A for the relevant pollutant.

D. Paragraph 45, Table 2 shall be amended to read as follows:

## TABLE 2

| CONSENT DECREE VIOLATIONS | STIPULATED PENALTY |
|---|---|
| Failure to pay the civil penalty as specified in Section IV (Civil Penalty) of this Consent Decree | $5,000 for each Day |
| Failure to comply with **the** 30-Day Rolling Average Emission Rate limitation for $NO_x$, where the emissions are less than 5% in excess of the limits set forth in this Consent Decree | $1,500 for each Operating Day during any 30-Day Rolling Period |
| **Failure to comply with the 90-Day Rolling Average Emission Rate limitation for $SO_2$, where the emissions are less than 5% in excess of the limits set forth in this Consent Decree** | **$750 for each Operating Day during any 90-Day Rolling Period** |
| Failure to comply with the 30-Day Rolling Average Emission Rate limitation for $NO_x$, where the emissions are equal to or greater than 5% but less than 10% in excess of the limits set forth in this Consent Decree | $3,000 for each Operating Day during any 30-Day Rolling Period |
| **Failure to comply with the 90-Day Rolling Average Emission Rate limitation for $SO_2$ where the emissions are equal to or greater than 5% but less than 10% in excess of the limits set forth in this Consent Decree** | **$1,500 for each Operating Day during any 90-Day Rolling Period** |
| Failure to comply with the 30-Day Rolling Average Emission Rate limitation for $NO_x$, where the emissions are equal to or greater than 10% in excess of the limits set forth in this Consent Decree | $5,000 for each Operating Day during any 30-Day Rolling Period |
| **Failure to comply with any 90-Day Rolling Average Emission Rate limitation for $SO_2$ where the emissions are equal to or greater than 10% in excess of the limits set forth in this Consent Decree** | **$2,500 for each Operating Day during any 90-Day Rolling Period** |
| Failure to timely install or commence Continuous Operation or Continuously Operate SNCR or LIS, as required in Paragraphs 10 and 11 at the Kiln | $5,000 for each Day during the first 20 Days, $10,000 for each Day for the next 40 Days, and $30,000 for each Day thereafter |
| Failure to timely apply for any permit or permit amendment required by Section VII (Permits) | $1,000 for each Day for each such failure |

4

| CONSENT DECREE VIOLATIONS | STIPULATED PENALTY |
|---|---|
| Failure to install or operate a CEMS in conformance with the requirements of Section V.C. (Continuous Emission Monitoring Systems), as applicable | $1,000 for each Day for each such failure |
| Failure to install or operate a Kiln System Ammonia Injection Monitoring System in conformance with the requirements of Section V.D. (Kiln Reagent Injection Monitoring System) | $1,000 for each Day for each such failure |
| Failure to timely complete the Demonstration Period as required by Section V of Exhibit A | $1,000 for each Day during the first 20 Days, $2,500 for each Day for the next 40 Days, and $5,000 for each Day thereafter |
| Failure to timely submit, modify, or implement, as approved, any of the following reports required by Exhibit A: (1) The Design Report; (2) the Optimization Protocol; (3) the Optimization Report; or (4) the Demonstration Period Final Report | $1,000 for each Day during the first 20 Days, $2,500 for each Day for the next 40 Days, and $5,000 for each Day thereafter |
| Failure to timely submit, modify, or implement, as approved, any report, plan, study, analysis, protocol, or other submittal required by this Consent Decree other than those identified elsewhere in this table | $750 for each Day during the first 10 Days, $1,000 for each Day thereafter |
| Any other violation of this Consent Decree, including failure to optimize process parameters or Control Technology parameters by the deadlines set forth in the Consent Decree. | $1,000 for each Day for each violation |

E.  Paragraph 47 shall be amended to read as follows:

47.    Violations of any limit based on a 30-Day **or 90-Day** rolling average constitutes 30 Days of violation o**r 90 Days of** violations **respectively** but where such a violation (for the same pollutant from the Kiln) recurs within periods less than 30 Days **for a 30-Day rolling average limit or 90 Days for a 90-Day rolling average limit,** CalPortland shall not be obligated to pay a daily stipulated penalty for any Day of the recurrence for which a stipulated penalty has already been paid.

F.  All additional references in the Consent Decree, including Exhibit A, to a "30-Day Rolling Average Emission Rate" with respect to $SO_2$ shall be amended to read "90-Day Rolling Average Emission Rate" with respect to $SO_2$.

G. All additional references in the Consent Decree, including Exhibit A, to a "30-Day Rolling Average Emission Limit" with respect to $SO_2$ shall be amended to read "90-Day Rolling Average Emission Limit" with respect to $SO_2$.

H. Paragraph 24 of Exhibit A shall be amended to read as follows:

24.    Notwithstanding Paragraphs 22 and 23 of this Exhibit A, in no event shall the Final Emission Limits proposed in the Demonstration Report(s), be greater than as specified in **Paragraph 19** (final Emission Limits) of the Consent Decree.

I.  All other provisions of the Consent Decree shall remain in effect.

J.  Each of the undersigned representatives of CalPortland and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Modification to the Consent Decree and to execute and legally bind the Party he or she represents to this document.

K. This Modification may be signed in counterparts, and its validity shall not be challenged on that basis.

L.  This Modification shall be lodged with this Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Modification disclose facts or considerations indicating that the Modification is inappropriate, improper, or inadequate.  CalPortland consents to entry of this Modification without further notice and agrees not to withdraw from or oppose entry of this Modification by this Court or to challenge any provision of the Modification, unless the United States has notified CalPortland that it no longer supports entry of the Modification.

M. This Modification to the Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the Modification of the Consent Decree, and this Modification to the Consent Decree

supersedes all prior agreements and understandings, whether oral or written concerning the Modification embodied herein.  Other than Deliverables that are to be subsequently submitted pursuant to this Modification to the Consent Decree, no other document and no other representation, inducement, agreement, understanding, or promise constitutes any part of this Modification to the Consent Decree or the settlement it represents, nor shall they be used in construing the terms of this Modification to the Settlement Agreement.

IT IS SO ORDERED.

Dated:   September 28, 2015      _____

SENIOR  DISTRICT  JUDGE